# Attachment 6

```
[Federal Register: December 22, 2000 (Volume 65, Number 247)]
[Rules and Regulations]
[Page 80745-80749]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr22de00-8]
```

=======================================================================
-----------------------------------------------------------------------

DEPARTMENT OF JUSTICE

Bureau of Prisons

28 CFR Parts 524 and 550

[BOP-1034-F; BOP-1052-F; BOP-1070-F]
RIN 1120-AA36; RIN 1120-AA66

Drug Abuse Treatment and Intensive Confinement Center Programs:
Early Release Consideration

AGENCY: Bureau of Prisons, Justice.

ACTION: Finalization of interim rules.

-----------------------------------------------------------------------

SUMMARY: In this document, the Bureau of Prisons (Bureau) finalizes
three interim final rules, published in 1995, 1996 and 1997, on Drug
Abuse Treatment Programs. These rules allow for consideration of early
release of eligible inmates who complete a residential drug abuse
treatment program. This document also finalizes the conforming
amendment to the criteria for possible sentence reduction under the
intensive confinement center program.

Federal Register / Vol. 65, No. 247 / Friday, December 22, 2000 / Rules and Regulations    80745

Order 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

*Paperwork Reduction Act*

This rule does not impose any new reporting or record-keeping requirements. The information collection requirement (Form OF–156) contained by reference in this rule was previously approved for use by the Office of Management and Budget (OMB) under the Paperwork Reduction Act.

**List of Subjects in 22 CFR Part 42**

Aliens, Immigration, Passports and visas.

In view of the foregoing the Department amends 22 CFR Chapter I as follows:

**PART 42—[AMENDED]**

1. The authority citation for Part 42 continues to read as follows:

   Authority: 8 U.S.C. 1104.

2. In § 42.32, revise paragraph (d)(1)(ii) to read as follows:

**§ 42.32   Employment based preference immigrants.**

* * * * *

(d) * * *

(ii) *Timeliness of application.* An immigrant visa issued under INA 203(b)(4) to an alien described in INA 101(a)(27)(C), other than a minister of religion, who qualifies as a "religious worker" as defined in 8 CFR 204.5, shall bear the usual validity except that in no case shall it be valid later than September 30, 2003.

* * * * *

Dated: November 13, 2000.

Mary A. Ryan,
*Assistant Secretary for Consular Affairs.*
[FR Doc. 00–32740 Filed 12–21–00; 8:45 am]
BILLING CODE 4710–06–P

---

**DEPARTMENT OF JUSTICE**

**Bureau of Prisons**

**28 CFR Parts 524 and 550**

[BOP–1034–F; BOP–1052–F; BOP–1070–F]

RIN 1120–AA36; RIN 1120–AA66

**Drug Abuse Treatment and Intensive Confinement Center Programs: Early Release Consideration**

**AGENCY:** Bureau of Prisons, Justice.
**ACTION:** Finalization of interim rules.

**SUMMARY:** In this document, the Bureau of Prisons (Bureau) finalizes three interim final rules, published in 1995, 1996 and 1997, on Drug Abuse Treatment Programs. These rules allow for consideration of early release of eligible inmates who complete a residential drug abuse treatment program. This document also finalizes the conforming amendment to the criteria for possible sentence reduction under the intensive confinement center program.

**EFFECTIVE DATE:** December 22, 2000.

**ADDRESSES:** Rules Unit, Office of General Counsel, Bureau of Prisons, HOLC Room 754, 320 First Street, NW., Washington, DC 20534.

**FOR FURTHER INFORMATION CONTACT:** Sarah Qureshi, Office of General Counsel, Bureau of Prisons, phone (202) 514–6655.

**SUPPLEMENTARY INFORMATION:** The Bureau finalizes its interim rules on Drug Abuse Treatment Programs (28 CFR part 550, subpart F). These interim rules implemented the Bureau's discretion under Section 32001 of the Violent Crime Control and Law Enforcement Act of 1994 (codified at 18 U.S.C. 3621(e)) to reduce the period of custody for inmates who successfully complete the treatment program.

We published the first interim rule in the Federal Register on May 25, 1995 (60 FR 27692) and we amended it by a second interim rule published on May 17, 1996 (61 FR 25122). We then published a third interim rule on this subject on October 15, 1997 (62 FR 53690). This last interim rule also made conforming amendments to the criteria for possible sentence reduction under the intensive confinement program (28 CFR 524.31(a)(3)).

On September 9, 2000, BOP published at 65 FR 56840 a proposed rule regarding "Drug Abuse Treatment Program". By that rule, BOP proposes changes to its existing regulations concerning participation in the drug abuse education course and the residential drug abuse treatment program, part of which had been codified by the three earlier interim rules which we finalize in this document. This document, therefore, does not affect comments to the proposed rule document published at 65 FR 56840. We will consider all comments we receive on the proposed rule before we finalize it. This document only discusses comments we received on the three interim final rules we previously published in 1995, 1996 and 1997.

**Changes Made by the First Interim Rule**

The first interim rule established the procedures which we would use to determine (1) eligibility for early release under 18 U.S.C. 3621(e) and (2) the length of the reduction in sentence.

To conform with the statutory provisions that possible reduction in sentence applies to an inmate convicted of a nonviolent offense, the procedures in our interim final rule stated that an inmate whose current offense falls under the definition in 18 U.S.C. 924(c)(3) of a crime of violence is excluded from early release.

Under section 924(c)(3), a crime of violence means an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. Staff use information in the Judgment and Commitment Order and the Presentence Investigation Report to determine if the inmate's committed offense meets this definition of crime of violence.

In exercising the Bureau's discretion to reduce a sentence, we also review the inmate's criminal history in the Presentence Investigation Report. We preclude early release for any inmate with an adult prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault. We selected the above categories of crimes, which are reported under the FBI Violent Crime Index, due to the extensive variations in statutes between states.

Inmates in our custody who are not serving a sentence for a federal offense (for example, INS detainees, pretrial inmates, or contractual boarders) are not eligible for early release. An inmate eligible for parole is not eligible for early release by the Bureau; however, information concerning the successful completion of a residential drug abuse treatment program by a parole-eligible inmate will be transmitted to the Parole Commission for consideration of a Superior Program Achievement Award (see 28 CFR 2.60).

**Summary of Public Comments on First Interim Rule**

Fifteen commenters objected on the grounds that the interim regulations did not extend early release to inmates serving a sentence for a non-parolable offense.

Four commenters objected to using prior convictions as a disqualifying criterion. Two of these commenters

requested that if we used prior convictions as a disqualifying criterion, we should limit such use to convictions within the last fifteen years. These commenters stated that the fifteen year time limit was used in the Sentencing Commission Criminal History Category.

Two commenters recommended that inmates who completed or were in Bureau drug abuse treatment programs between the time it became known that Congress was considering the amendment to 18 U.S.C. 3621(e) and the publication of the interim rule be granted consideration regardless of any disqualifying criterion.

These commenters stated that inmate participation in the Bureau's drug abuse treatment program was motivated by the expectation that the inmate would subsequently be eligible for early release. One of these commenters recommended that some offenses should not be included under the prior conviction category, but recommended that others be included.

One commenter, the American Psychiatric Association, agreed that the program was a good idea, but expressed concern about the adequacy of transitional drug treatment programming provided at Bureau institutions. The Bureau's regulations in 28 CFR 550.59(a) required minimum participation of one hour per month for such transitional services. The Association stated that this minimum was probably not of sufficient intensity to facilitate a good outcome and recommended enhanced psychiatric consultation and the availability of a broad array of services. The comment by the American Psychiatric Association on the adequacy of transitional services became the basis for the second interim rule.

**Agency Response to Public Comment on the First Interim Rule**

We do not have statutory authority under 18 U.S.C. 3621(e) to grant early release to an inmate who is serving a sentence for an offense committed before November 1, 1987 (commonly referred to as an ''old-law'' sentence).

Section 3621(e) applies to inmates serving sentences determined by Sentencing Guidelines (commonly referred to as ''new-law'' sentences). Some inmates with ''old-law'' sentences may be eligible for parole. We provide information concerning a parole-eligible inmate's satisfactory participation in our drug abuse treatment programs to the United States Parole Commission for the Commission's use in making determinations under its own regulations (see 28 CFR 2.60) on an inmate's superior program achievement.

Information regarding prior convictions is in the Presentence Investigation Report (PSI). The PSI is a court document and is subject to review by the defendant and defense counsel. In general, information in the PSI about prior convictions may be limited to the fifteen year period covered in the Sentencing Commission Criminal History Category.

If, however, the PSI contains information on prior convictions beyond the period covered in the Criminal History Category, we believe that we are acting in accordance with Congressional intent when we use the listed prior conviction as a disqualifying criterion.

We do not agree with the contention that inmates who participated in drug abuse treatment before the publication of the first interim rule should be granted early release regardless of disqualifying criteria. We must predicate early release on our implementing regulations. The regulations implement our statutory authority by defining successful completion of the drug abuse treatment program and by qualifying the exercise of the Director's discretion to reduce the sentence.

We issued the regulations as interim rules to extend the early release incentive to eligible inmates as quickly as practicable. Inmates who participate in our drug abuse treatment program clearly benefit from the program's objective of equipping the individual with the cognitive, emotional, and behavior skills necessary to choose and maintain a drug-free and crime-free lifestyle, even if they are not eligible for early release.

**Changes Made by the Second Interim Rule**

We recognize the importance of transitional services in drug treatment programming and agree with the American Psychiatric Association that an enhanced transitional program, such as is available in a community-based program, increases the opportunity for a good outcome. Transitional services offered within the institution are a minimum of one hour per month. Even so, we believe that successful completion of the program must include both the institutional and the community-based component.

While we may be able to increase the availability of certain transitional services at an institution, we cannot duplicate within the institution the environment of community-based transitional services (i.e., the evaluation of the inmate in conditions where the inmate is reintegrating into the community).

We therefore further amended the interim regulations to require that early release be contingent upon the inmate's completion of transitional services in a community-based program (i.e., in a Community Corrections Center or on home confinement).

One result of the revision was that an inmate who we do not place in community-based programs because of community safety or custodial considerations would not be eligible for early release. The Warden, in her/his professional discretion, decides whether to place an inmate in a community corrections center. The Warden makes the decision based on factors such as the presence of a detainer or the possibility that the inmate's placement in a community-based program would pose a danger to the public.

In implementing the second interim rule, we chose to waive the new requirement with respect to inmates with a detainer participating in the drug abuse treatment program on or before August 17, 1995. These inmates could therefore complete transitional services within the institution before being turned over to the detaining authority.

**Summary of Public Comment on the Second Interim Rule**

We received three comments on the second interim rule. One commenter agreed with the change being made, but objected to excluding inmates serving a sentence for a non-parolable offense.

Another commenter objected to any exclusion, stating that exclusions were not authorized under 18 U.S.C. 3621(e).

A third commenter objected on the grounds that the statute did not require transitional services. This commenter argued that we moved beyond the intent of Congress in a number of ways.

The commenter objected to the program's name (drug abuse treatment program), stating that it was offensive and contrary to the clear wording of Congress (substance abuse treatment program). The commenter argued that the statute provides for aftercare services when the participant leaves the custody of the Bureau of Prisons rather than for transitional services. The commenter maintained that requiring transitional services delayed or limited possible sentence reductions and consequently resulted in greater costs to the government. The commenter also maintained that variations in individual sentences resulted in inconsistent benefits to eligible inmates.

In June 2000, the American Psychiatric Association submitted a clarification to its original comment. In

this clarification, the Association agrees with the Bureau's contention that it cannot duplicate within a prison institution the environment of community-based transitional services.

The Association, however, does think that transitional services can be established within a prison setting that can improve the outcome related to successful completion of a residential drug treatment program. The Association believes that this can be done by increasing the minimum requirement for transitional services within the institution from the original minimum of one hour per month. The Association does not mean to present an either/or choice of one hour per month within the institution or full participation in the community-based program.

The Association recommends that the rule be reviewed with respect to the importance of providing substance abuse treatment to prisoners requiring external incentives for participation.

**Agency Response To Comments on the Second Interim Rule**

As noted above in the response to the first interim rule, we do not have statutory authority under 18 U.S.C. 3621(e) to grant early release to an inmate who is serving a sentence for an offense committed before November 1, 1987 (commonly referred to as an "old-law" sentence).

We disagree with the assertion that 18 U.S.C. 3621(e) does not allow for exclusions. By statute, the Director of the Bureau is responsible for determining what constitutes successful completion of the program and for making the decision to reduce the period of custody. The interim rules established procedures, including qualifying criteria, for these purposes.

As for the concerns raised by the third commenter, we wish to emphasize the significance of the nomenclature change with respect to the basis for the transitional services requirement. We have statutory authority under 18 U.S.C. 3621(b) to place inmates in community-based programs such as a community corrections center. Such inmates are technically still in the custody of the Bureau. Furthermore, because the transitional services component is critical to the success of the treatment, successful completion of the "residential substance abuse treatment" program as determined by the Director of the Bureau of Prisons, per 18 U.S.C. 3621(e)(2)(A), includes both the unit-based program and the following transitional services component.

The provisions pertaining to "aftercare" in the statute are separate. Transitional services in a community-based program are an essential component of the residential substance abuse program envisioned by the statute. As for questions of cost, we do not believe that reducing costs for the government outweighs our responsibility to protect the public.

Finally, inconsistent results cited by the third commenter largely depend upon the circumstances of inmates present at the initial implementation of the interim regulations. In summary, our regulations represent our judgment as to successful completion of the program and the subsequent discretionary granting of a reduction of the time an inmate remains in custody.

As for the clarification by the American Psychiatric Association, we do not believe that it is practicable to enhance transitional services within the institution sufficiently to ensure the intended results. We acknowledge the importance of providing incentives to inmates to participate in drug abuse treatment program. To this purpose, the Bureau published a separate proposed rulemaking in the **Federal Register** (published in proposed form on September 20, 2000 at 65 FR 56840) to address incentives for inmates who would not receive an early release benefit.

**Summary of Changes in the Third Interim Rule**

The first interim rule attempted to define the term "crime of violence" pursuant to 18 U.S.C. 924(c)(3). Due to varying interpretations of the regulation and caselaw, the Bureau could not apply the regulation in a uniform and consistent manner.

The third interim rule sought to resolve this complication. In the third interim rule, we used the discretion allotted to the Director for granting a sentence reduction to exclude inmates whose current offense is a felony (a) that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or (b) that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or (c) that by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or (d) that by its nature or conduct involves sexual abuse offenses committed upon children. Thus, even as the Bureau concedes that offenses related to this regulation are "non-violent" offenses, the implementing statute does not mandate that all "non-violent" offenders must receive an early release. The statute merely indicates that the sentence may be reduced by the Bureau of Prisons.

As a conforming amendment, the third interim rule correspondingly revised the criteria for possible sentence reduction under the intensive confinement center program (28 CFR 524.31(a)(3)).

In the third interim rule, we also addressed the Community Corrections Regional Administrator's authority under section 550.58(c)(3) to disallow any portion of the maximum 12 month reduction for an inmate in a community-based program due to a disciplinary finding or due to program needs (for example, the inmate has not established an adequate release plan).

**Summary of Public Comment on the Third Interim Rule**

We received comments from approximately 150 individuals and organizations. One hundred thirty-eight individuals submitted identical comments. These commenters stated that we were using sentencing factors to label non-violent inmates as violent offenders rather than relying only on the offense of conviction.

These commenters urged that the courts should determine whether an offense was violent. The commenters also argued that inmates were being subjected to double jeopardy because an element used in the court's determination of sentence (for example, a gun enhancement) was also being used to exclude the inmates from the early release benefit.

Five other commenters objected to the requirement that transitional services must be provided in a community-based program, stating that this discriminated against aliens with INS detainers. These commenters asserted that denying the early release benefit resulted in excessive costs to the government. One of these commenters recommended that transitional services be offered in the institution, noting that the terms of an INS detainer are not intended to affect classification, work, quarters assignments, or other treatment an inmate would otherwise receive.

One commenter objected to the rulemaking on the grounds that differing circuit court decisions had resulted in inconsistent application of the policy.

Two commenters objected to the words "attempted" and "threatened" in the early release criteria (§ 550.58(a)(1)(vi)(A)). These commenters further contended that intimidation should not be considered a violent offense.

One commenter objected, arguing that the rule was an arbitrary expansion of

reasonable discretion, and that we were usurping the authority and good judgment of the courts and the legislative powers of Congress. This commenter asserted that any determination of conduct indicative of a violent offense was a matter of fact for the jury's consideration.

The commenter also maintained that our discretion was directed to the proper operation of prisons and not to the determination of the length of sentences for those inmates who successfully complete the program; that Presentence Investigation Reports were for the court's use only; that possession of a weapon or involvement in a conspiracy were not violent crimes; that the program did have an economic impact because it was specially funded by Congress; that the intent of the rule was not rehabilitative, and that the Bureau refused to execute the plain meaning of the statute.

A Public Defender's Office submitted comments stating that the regulations unduly restricted eligibility for a remedial program by inappropriately expanding the class of convictions deemed violent, by excluding prisoners with previous convictions for violent crimes, and by excluding all prisoners who were not eligible to participate in community-based programs (for example, inmates with INS detainers who would be unable to receive transitional services in a community corrections center).

The National Association of Criminal Defense Lawyers and Families Against Mandatory Minimums jointly submitted their comments. These commenters expressed their support for our stated commitment to provide drug abuse treatment services to all inmates with a documented need and/or interest. In keeping with this goal, they argued that the early release incentive should be made available to the broadest population consistent with the statute. They maintained that both the statutory language and the legislative history show that Congress intended broader application than the rule allows. They objected to the use of prior convictions and to felonies being excluded under the Director's discretion (550.58(a)(1)(vi)). They argued that some prior convictions (for example, foreign convictions) were unreliable, that prior convictions are not necessarily predictive.

### Agency Response to Public Comment on the Third Interim Rule

No comments specifically addressed the conforming changes to the eligibility criteria for the intensive confinement center or for the authority of the Community Corrections Regional Administrator.

As noted in the preamble of the third interim rule, we excluded inmates with certain felonies from receiving the early release incentive not because the offense is a "crime of violence," but as an exercise of the Director's discretion. Thus, we are no longer classifying these offenses as a "crime of violence."

We disagree with the assertion that our regulations raise the issue of double jeopardy. Our regulations do not impact the determination of the sentence or seek to impose an additional penalty, but instead pertain to the separate question of how we convey the sentence reduction incentive.

As noted in the response to the second interim rule, we believe that a residential treatment program requires participation in a community-based setting. Therefore, inmates who are not eligible to be placed in a community-based program (for example, inmates with INS detainers) are not eligible for early release.

As noted above, we do not believe that reducing costs for the government outweighs our responsibility to protect the public. Furthermore, while a detainer does not generally effect classification, work, quarters assignments, etc., due to concerns of a flight risk and community safety, detainers are always considered when deciding whether to place an inmate in the community.

As for the concerns raised over the effects of differing circuit court decisions, by implementing the third interim rule, we tried to address the concerns raised by various circuit courts of appeals. Thus, the previous caselaw did not address the revised interpretation of the statute. Accordingly, the Bureau again had a uniform national policy. As courts interpreted the new rule, there again arose a split in circuit court decisions which ultimately, of course, can only be resolved by the Supreme Court.

We disagree with the assertion that our rules are an arbitrary expansion of reasonable discretion and that they usurp the authority and good judgment of the courts and the legislative powers of Congress. Upon successful completion of the program, the statute notes only two conditions which the Bureau cannot breach: first, the early release incentive is available only to "non-violent" offenders; second, the incentive may not exceed one year. Congress imposed no other restrictions on the manner in which the incentive is granted. Specifically, Congress did not mandate that all eligible inmates must receive the early release incentive. The reduction in sentence is an incentive to be exercised at the discretion of the Bureau of Prisons.

The assertion that the interim rules have an economic impact because the program is specially funded is without merit. Our regulations have no direct impact on small businesses.

We also take issue with assertions that the regulations intent is not rehabilitative or that they unduly restrict eligibility for a remedial program. Our drug abuse treatment program is open to all inmates with a documented need and interest in the program. The restrictions in question pertain to the conveyance of a separate incentive at our discretion. As noted above, we instituted a separate rulemaking to establish further participation incentives for inmates who are not eligible for early release.

Accordingly, upon due consideration of the comments received, we finalize the three interim rules without change.

### Executive Order 12866

The Office of Management and Budget (OMB) determined that certain rules are part of a category of actions which are not "significant regulatory actions" under section 3(f) of Executive Order 12866. Because this rule falls within that category, OMB did not review it.

### Executive Order 13132

This regulation will not have substantial direct effects on the States, on the relationship between the national government and the States, or on distribution of power and responsibilities among the various levels of government. Under Executive order 13132, this rule does not have sufficient federalism implications for which we would prepare a Federalism Assessment.

### Regulatory Flexibility Act

The Director of the Bureau of Prisons, under the Regulatory Flexibility Act (5 U.S.C. 605(b)), reviewed this regulation. By approving it, the Director certifies that it will not have a significant economic impact upon a substantial number of small entities because: This rule is about the correctional management of offenders committed to the custody of the Attorney General or the Director of the Bureau of Prisons, and its economic impact is limited to the Bureau's appropriated funds.

### Unfunded Mandates Reform Act of 1995

This rule will not cause State, local and tribal governments, or the private sector, to spend $100,000,000 or more in any one year, and it will not

Federal Register / Vol. 65, No. 247 / Friday, December 22, 2000 / Rules and Regulations        80749

significantly or uniquely affect small governments. We do not need to take action under the Unfunded Mandates Reform Act of 1995.

**Small Business Regulatory Enforcement Fairness Act of 1996**

This rule is not a major rule as defined by Section 804 of the Small Business Regulatory Enforcement Fairness Act of 1996. This rule will not result in an annual effect on the economy of $100,000,000 or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

**Plain Language Instructions**

We want to make Bureau documents easier to read and understand. If you can suggest how to improve the clarity of these regulations, call or write to Sarah Qureshi at the address or telephone number listed above.

**List of Subjects**

*28 CFR Part 524*

Prisoners.

*28 CFR Part 550*

Prisoners.

Kathleen Hawk Sawyer,
*Director, Bureau of Prisons.*

Subchapter B—Inmate Admission, Classification, and Transfer

PART 524—CLASSIFICATION OF INMATES

Subchapter C—Institutional Management

PART 550—DRUG PROGRAMS

Accordingly, under the rulemaking authority vested in the Attorney General in 5 U.S.C. 552(a) and delegated to the Director, Bureau of Prisons, we adopt the interim rules amending 28 CFR parts 524 and 550 which were published on May 25, 1995 (60 FR 27692), May 17, 1996 (61 FR 25121), and October 15, 1997 (62 FR 53690) as final wihtout change.

[FR Doc. 00–32772 Filed 12–21–00; 8:45 am]
BILLING CODE 4410-05-M

**DEPARTMENT OF THE TREASURY**

**Office of Foreign Assets Control**

**31 CFR Chapter V**

**Blocked Persons, Specially Designated Nationals, Specially Designated Terrorists, Foreign Terrorist Organizations, and Specially Designated Narcotics Traffickers: Additional Designations and Supplementary Information on Specially Designated Narcotics Traffickers**

**AGENCY:** Office of Foreign Assets Control, Treasury.
**ACTION:** Amendment of final rule.

**SUMMARY:** The Treasury Department is amending appendix A to 31 CFR chapter V by adding the names of 8 individuals and 8 entities and supplementing information concerning 16 individuals who have been designated as specially designated narcotics traffickers.
**EFFECTIVE DATE:** December 19, 2000.
**FOR FURTHER INFORMATION CONTACT:** Office of Foreign Assets Control, Department of the Treasury, Washington, D.C. 20220, tel.: 202/622–2520.
**SUPPLEMENTARY INFORMATION:**

**Electronic and Facsimile Availability**

This document is available as an electronic file on The Federal Bulletin Board the day of publication in the Federal Register. By modem, dial 202/512–1387 and type "/GO FAC," or call 202/512–1530 for disk or paper copies. This file is available for downloading without charge in ASCII and Adobe Acrobat® readable (*.PDF) formats. For Internet access, the address for use with the World Wide Web (Home Page), Telnet, or FTP protocol is: fedbbs.access.gpo.gov. This document and additional information concerning the programs of the Office of Foreign Assets Control are available for downloading from the Office's Internet Home Page: http://www.treas.gov/ofac, or in fax form through the Office's 24-hour fax-on-demand service: call 202/622–0077 using a fax machine, fax modem, or (within the United States) a touch-tone telephone.

**Background**

Appendix A to 31 CFR chapter V contains the names of blocked persons, specially designated nationals, specially designated terrorists, foreign terrorist organizations, and specially designated narcotics traffickers designated pursuant to the various economic sanctions programs administered by the Office of Foreign Assets Control ("OFAC"). Pursuant to Executive Order 12978 of October 21, 1995, "Blocking Assets and Prohibiting Transactions with Significant Narcotics Traffickers" (the "Order") and § 536.312 of the Narcotics Trafficking Sanctions Regulations, 31 CFR part 536 (the "Regulations"), the following 8 individuals and 8 entities are added to appendix A as persons who have been determined to play a significant role in international narcotics trafficking centered in Colombia, to materially assist in or provide financial support or technological support for, or goods or services in support of other specially designated narcotics traffickers, or to be owned or controlled by, or to act for or on behalf of, persons designated in or pursuant to the Order (collectively "Specially Designated Narcotics Traffickers" or "SDNTs"). All real and personal property in which the SDNTs have any interest, including but not limited to all accounts, that are or come within the United States or that are or come within the possession or control of U.S. persons, including their overseas branches, are blocked. All transactions by U.S. persons or within the United States in property or interests in property of SDNTs are prohibited unless licensed by the Office of Foreign Assets Control or exempted by statute. Supplementary information is added to existing SDNT entries for 16 individuals and those entries are revised in their entirety.

Designations of foreign persons blocked pursuant to the Order are effective upon the date of determination by the Director of the Office of Foreign Assets Control, acting under authority delegated by the Secretary of the Treasury. Public notice of blocking is effective upon the date of filing with the Federal Register, or upon prior actual notice.

Because the Regulations involve a foreign affairs function, Executive Order 12866 and the provisions of the Administrative Procedure Act (5 U.S.C. 553), requiring notice of proposed rulemaking, opportunity for public participation, and delay in effective date, are inapplicable. Because no notice of proposed rulemaking is required for this rule, the Regulatory Flexibility Act (5 U.S.C. 601–612) does not apply.

For the reasons set forth in the preamble, and under the authority of 3 U.S.C. 301; 50 U.S.C. 1601–1651; 50 U.S.C. 1701–1706; E.O. 12978, 60 FR 54579, 3 CFR, 1995 Comp., p. 415,